UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL IBRAHAM, | ) |
|        Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES OF AMERICA, HEARTLAND INTERNATIONAL HEALTH CENTER, INC., as agent and employee of the United States of America and DAVID J. FREEDMAN, M.D., as agent and employee of The United States of America, | ) No. |
|        Defendants. | ) |

**COMPLAINT AT LAW**

Now Comes the Plaintiff, PAUL IBRAHAM, by his attorneys, McARDLE FROST, and complaining against the Defendant, THE UNITED STATES OF AMERICA, HEARTLAND INTERNATIONAL HEALTH CENTER INC., as agent and employee of the United States of America, and DAVID J. FREEDMAN, M.D., as agent and employee of the United States of America, states as follows:

**JURISDICTIONAL ALLEGATIONS**

1. The jurisdiction of this case arises out of the Federal Tort Claims Act, 28 U.S.C. §1346(b) §2671 et. seq. Before this action was instituted, the claims set forth herein were presented to the United States Department of Health and Human Services by way of written notice and was received in the office of the General Counsel on July 11, 2016.

2. The Plaintiff has filed the requisite notices and claims with the United States Department of Health and Human Services and more than 180 days has passed. Pursuant to the provisions of 28 U.S.C. §2675, the administrative review process has been deemed denied as a matter of law.

3. The Plaintiff, Paul Ibraham, is a resident of the County of Cook in the State of Illinois.

4. This cause of action arose in the County of Cook in the State of Illinois making the Northern District of Illinois the proper venue.

5. The United States Department of Health and Human Services is an agency of The United States of America and is a proper party defendant pursuant to 28 U.S.C. §1346(b). The Court has jurisdiction over The United States of America pursuant to 28 U.S.C. §331, 28 U.S.C. §1364(b) and 28 U.S.C. §2675 et. seq.

6. The amount in controversy is over $50,000.00 and this Court otherwise has jurisdiction.

## COMMON ALLEGATIONS

7. At all times pertinent hereto, Heartland International Health Center was a corporation licensed and authorized to do business in the State of Illinois and operated a medical clinic/health center with facilities throughout the Chicagoland

area including but not limited to Heartland Health Center—Rogers Park, 2200 W. Touhy Avenue, Chicago, Illinois 60645.

8. At all times pertinent hereto, David J. Freedman, M.D. was a physician licensed and authorized to practice medicine in the State of Illinois in all its branches in holding himself out as a specialist in internal and primary care medicine.

9. At all times pertinent hereto, the Defendant, Heartland International Health Center employed physicians to provide medical care to patients in the medical clinics which it had operated and those employees included David J. Freedman, M.D.

10. At all times pertinent hereto, the Defendant, David J. Freedman, M.D. operated within the course and scope of his employment as a physician at Heartland International Health Center, Inc.

11. At all times pertinent hereto, Heartland International Health Centers d/b/a Heartland Health Centers was a federally supported health center pursuant to the terms of the federally supported Health Center's Assistance Act of 1992 as Amended, 42 U.S.C. §233(g)-(n), and Heartland International Health Centers, and its employees are deemed employees of the United States of America.

12. Pursuant to the terms of the federally supported Health Center's Assistance Act of 1992 as Amended, 42 U.S.C.

3

§233(g)-(n), the Federal Tort Claims Act, 28 U.S.C. §1346(b), 2671, 2680, is the exclusive remedy for injuries including death caused by employees of a deemed community health center.

13. Beginning in December of 2013, the Plaintiff, Paul Ibraham, was in a physician/patient relationship with the Heartland International Health Center and David J. Freedman, M.D.

14. During an initial office visit between the Plaintiff, Paul Ibraham and the Defendant, David J. Freedman, M.D., Dr. Freedman obtained a history revealing that Paul Ibraham was 20 years old, had suffered from depression from a period of approximately two years, had been hospitalized four to five times for depression and had complaints of right shoulder pain.

15. In January of 2014, the Defendants including David J. Freedman, M.D. learned from radiographic studies that there was no radiographic evidence of rotator cuff tear or other orthopedic injury to the Plaintiff's right shoulder.

16. Between December of 2013 and August of 2015, Defendants prescribed, authorized and prescribed the following controlled substances for the Plaintiff, Paul Ibraham:

    (a)   Tramadol in the amount of at least 2,110 tablets;

    (b)   Temazepam in the amount of at least 1,055 tablets;

    (c)   Oxycodone-based controlled substances in the amount Of at least 985 tablets;

    (d)   Valium in the amount of at least 180 tablets;

4

    (e)    Lyrica in the amount of at least 585 tablets;

    (f)    Hydrocodone-based controlled substances in the amount of at least 70 tablets;

    (g)    Fentanyl patches in the amount of at least 70 patches.

17. The Defendants continued to prescribe multiple controlled substances to the Plaintiff on an ongoing and continual basis from December of 2013 through July of 2015.

18. At all times pertinent hereto, it was the duty of the Defendants and each of them to possess and apply the knowledge and use the skill and care of a reasonably well qualified physicians under the same or similar circumstances.

19. Notwithstanding the aforesaid duty, the Defendants and each of them were negligent in one or more of the following ways:

    (a)    Prescribed OxyCodone for the patient when that medication was not medically indicated for any reasonable medical use and in doses and quantities which were contra indicated and placed the plaintiff at substantial risk for opioid dependence, addiction and other grave harm.

    (b)    Prescribed Hydrocodone for the patient when that medication was not medically indicated for any reasonable medical use and in doses and quantities which placed the Plaintiff at risk for opioid dependence, addiction and other grave harm.

    (c)    Prescribed Fentanyl patches for the patient when that medication was not medically indicated for any reasonable medical use and in doses and quantities which placed the plaintiff at risk of opioid dependence, addiction and other grave harm.

    (d)    Prescribed Tramadol for the patient when that medication was not medically indicated for any

      reasonable medical use and in doses and quantities which placed the plaintiff at risk for opioid dependence, addiction and other grave harm.

(e) Prescribed Temazepam for the patient when that medication was not medically indicated for any reasonable medical use and in doses and quantities which placed the plaintiff at risk for opioid dependence, addiction and other grave harm.

(f) Prescribed Valium for the patient when that medication was not medically indicated for any reasonable medical use and in doses and quantities which placed the plaintiff at risk for opioid dependence, addiction and other grave harm.

(g) Prescribed Lyrica for the patient when that medication was not medically indicated for any reasonable medical use and in doses and quantities which placed the plaintiff at risk for opioid dependence, addiction and other grave harm.

(h) Prescribed Ativan for the patient when that medication was not medically indicated for any reasonable medical use and in doses and quantities which placed the plaintiff at risk for opioid dependence, addiction and other grave harm.

(i) Failed to recognize and/or intervene when the Plaintiff had become addicted to controlled substances.

(j) Continued to prescribe controlled substances when they knew or should have known through the exercise of reasonable medical judgment that the Plaintiff was experiencing addiction to controlled substances.

(k) Failed to recognize that the use of controlled substances including OxyCodone, Fentanyl Patch, Tramadol, Valium, Temazepam, Hydrocodone, Lyrica and Ativan is associated with the development of substance abuse disorder and/or addiction.

(l) Failed to adequately monitor the Plaintiff for the Development of physical dependence; severe withdrawal symptoms; substance abuse disorder and/or addiction.

    (m)    Failed to recognize and act on clear and repeated warning signs that the Plaintiff had become addicted to controlled substances and was a danger to himself and others.
    (n)    Was otherwise careless and negligent.

20. As a direct and proximate result of one or more of the foregoing careless and negligent acts on the part of the Defendants and each of them, Paul Ibraham became addicted to controlled substances including strong opioids, suffered personal injury and damages including pain, suffering, disability, emotional distress, symptoms of withdrawal and other permanent physical and psychiatric injuries, has incurred medical and hospital expenses and will continue to incur medical, hospital and rehabilitative expenses in the future and has otherwise lost and will continue to lose great gains which he otherwise would have accomplished.

21. As a result of the foregoing, David J. Freedman was interviewed by the Drug Enforcement Administration of the United States of America and the Illinois Department of Financial and Professional Regulation and found to be in violation of the Illinois Medical Practice Act including breaching his physician responsibility to the patient according to accepted medical standards of practice and inappropriately prescribing multiple controlled substances and as a result thereof, his license to practice medicine and prescribe medications was suspended on an

emergency basis and thereafter he consented to discipline on his Certificate of Registration as a physician.

22. Timothy I. McArdle, attorney for the Plaintiff, has consulted with a health care professional, pursuant to 735 ILCS 2/622, and after his consultation and obtaining a report from the reviewing health care professional whom he believes to be knowledgeable and competent in the issues herein, has concluded that there is a reasonable and meritorious basis for the filing of this action. A copy of the Affidavit of Timothy I. McArdle and the health care practitioner's report are attached hereto as Exhibit A.

WHEREFORE it is prayed that this Honorable Court enter judgment in favor of the Plaintiff, Paul Ibraham and for the Defendants and each of them, in a sum of money in excess of the jurisdictional limits of this Court which will fairly and adequately compensate him for the injuries and damages suffered herein.

Respectfully submitted,

McARDLE FROST
20 North Clark Street – 30th Floor
Chicago, IL 60602
(312) 372-0500
ARDC 26605

William A. Schwer, M.D.  
*Professor and Chairman*  
*Department of Family Medicine*

Family Medicine Department  
630 S. Hermitage  
Suite 605 Kidston  
Chicago, IL 60612

Tel 312.942.7083  
Fax 312.942.7086

**RUSH UNIVERSITY**  
COLLEGE OF NURSING  
RUSH MEDICAL COLLEGE  
COLLEGE OF HEALTH SCIENCES  
THE GRADUATE COLLEGE


RUSH UNIVERSITY MEDICAL CENTER

February 1, 2017

Dear Mr. McArdle;

    I am a physician, licensed to practice medicine in all of its branches, with an active clinical and academic practice in Cook County, Illinois. I am Board Certified in Family Medicine, and have been the Chairman of the Department of Family Medicine at Rush Presbyterian -St. Luke's Medical Center since 1996. At your request, I have reviewed the medical records and ancillary documentation surrounding Paul Ibrahim's treatment at Heartland International Health Center, which was primarily under the direction of Dr. David Freedman. I am qualified by training and experience in the subject matter of that treatment, and based upon my review; it is my opinion that there is a reasonable and meritorious cause for filing an action against Dr. David Freedman M.D., Heartland International Health Center, and its employees. Dr. Freedman began treating Mr. Ibrahim in December 2013. At that time, Dr. Freedman learned by way of history that Paul Ibrahim was 20 years old, had a history of depression for 2 years, and several hospital admissions for depression, with possible suicide attempts. He also learned that the patient had been taking Haldol for several months, and was also taking Ativan. He began treating the patient for a shoulder injury, of unknown and unproven nature. Between the initial visit and July, 2015, Dr. Freedman continuously prescribed addictive controlled substances, including but not limited to Oxycodone, Hydrocodone, Fentanyl patch, tramadol, Temazepam, Valium, Lyrica, and Ativan. Dr. Freedman prescribed these medications notwithstanding serious indications that the patient was becoming, and had become addicted to opiates, and was also exhibiting continuous signs of drug seeking behavior.

It is my opinion, based upon the records and other relevant documentation that the care and treatment provided by Dr. David Freedman, and the Heartland International Health Center, fell well below the standard of care, and was negligent in at least the following ways:

a. Prescribed addictive controlled substances when those medications were not indicated based upon the patient's presentation, and thus were not medically necessary.
b. Prescribed addictive controlled substances in quantity and potency which were contraindicated based upon the patient's clinical presentation.
c. Prescribed addictive controlled substances notwithstanding the clear evidence that his patient had become addicted to those drugs.
d. Continued to prescribe addictive controlled substances even after he was confronted with evidence of his patient's addiction despite his patient's emergency room treatments for overdose, and observing the patients drug seeking behavior.
e. Prescribed addictive controlled substances without medical work-up for the patient's physical complaints.

# EXHIBIT A

f. Prescribed Temazepam off label as an anxiety medication without proper indication.
g. Failed to refer the patient for consultation and treatment by specialists in the field of orthopedics, pain management, addiction, and psychiatry, when it was clear that these consultations were necessary for the patient's health and safety.
h. Failed to provide his patient with the advice and counseling necessary for the patients' health and safety.

Because of these deviations from the standard of care, Dr. Freedman caused, and allowed the patient to become physically and mentally addicted to strong opiates. He allowed this addiction to occur and worsen over time without necessary intervention. This resulted in physical and psychological harm, the need for multiple hospitalizations, multiple overdoses of opiates, and the need for inpatient rehabilitation, psychological counseling, and the need for maintenance methadone, as well as the long term physical and emotional sequalae of addiction to powerful opiates. It is also my opinion that had Dr. Freedman complied with his obligation under the standard of care, the harms experienced by Paul Ibraham would not have occurred, and/or would be significantly lessened in severity and nature.

I reserve the right to amend and expand these opinions as additional documentation becomes available.

Very Truly Yours;

*William A. Schwer M.D.*

William A. Schwer M.D.
Professor and Chairman
Department of Family Medicine

## AFFIDAVIT

Your Affiant, Timothy I. McArdle, on oath being first duly sworn, deposes and states as follows:

1. That in accordance with the Illinois Code of Civil Procedure and Rules of Court, 735 ILCS 5/2-622, I have consulted and reviewed the facts of this case with a health care professional who I reasonably believe is knowledgeable in the relevant issues involved in the particular aspects of this case.

2. The health care professional practices or has practiced within the last six years in the same area of medicine that is at issue in this particular action.

3. The health care professional is qualified by experience and has demonstrated competence in the subject of this case.

4. The reviewing health care professional has determined in a written report, after a review of the medical records and other relevant materials involved in this particular action, that there is a reasonable and meritorious cause for the filing of such action.

5. Your Affiant has concluded on the basis of the reviewing health care professional's review and consultation, that there is a reasonable and meritorious cause for filing of such action.

6. The health care professional is licensed to practice medicine in all its branches in the State of Illinois.

7. A copy of the written report is attached to this Affidavit.

The foregoing by me hereto attested is true and correct.

_____
Timothy I. McArdle

SUBSCRIBED AND SWORN TO
before me this 31st day
of January, 2017.

_____
Notary Public

OFFICIAL SEAL
LOURDES ROLDAN-RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES
FEBRUARY 18, 2017